Lynn Hubbard III, SBN 69773
**Disabled Advocacy Group, APLC**
12 Williamsburg Lane
Chico, California 95926
Telephone:  (530) 895-3252
Facsimile:   (530) 894-8244

Attorney for plaintiff Chris Kohler

United States District Court

Central District of California

| | |
|---|---|
| Chris Kohler,<br><br>  Plaintiff,<br><br>  vs.<br><br>Rednap, Inc., et al.,<br><br>  Defendant. | Case No. 2:11-cv-2752 GAF-SS<br><br>**Opposition to defendant Rednap, Inc.'s, motion to dismiss state law claims**<br><br>Date:  July 11, 2011<br>Time:  9:30 a.m.<br>Room:  740 |

## INTRODUCTION

At what point did it become permissible to ignore controlling authority in order to cast aspersions on one's opponent? Or move for dismissal based on legally unsupported arguments? And, yet, that is precisely what Rednap has done here – *i.e.*, resort to the "troubling trend" of disabled access litigation by attacking the motives of disabled plaintiffs (and their counsel) seeking to enforce the right to equal access guaranteed by the ADA and California statutes. *See*, *e.g.*, *Kittok v. Leslie's Poolmart, Inc.*, 687 F.Supp.2d 953, 958-959 (C.D. Cal. 2009), citing, *inter alia*, *Wilson v. Pier 1 Imports (US), Inc.*, 411 F.Supp.2d 1196 (E.D. Cal. 2006), and *Doran v. Vicorp Restaurants, Inc.*, 407 F.Supp.2d 1115 (C.D. Cal. 2005). These attacks are not only wholly inappropriate in tone, they disregard published Ninth Circuit opinions, which reject a majority of the arguments presented in defendant's motion and which were brought to defense counsel's attention during the Local Rule 7-3 meet and confer. Worse, the issues presented in the *Introduction* or *Background* section of defendant's motion are completely irrelevant to the remedy it seeks – *i.e.*, convince the court to decline supplemental jurisdiction over Kohler's state law claims – and were ostensibly included for no other purpose than poisoning the well. Stripped of these artifices, however, the court will see that Rednap's request to dismiss the state law claims from this lawsuit is based on nothing more than stale arguments and out-dated authority. Plaintiff, thus, opposes defendant's motion and the arguments contained therein

## DISCUSSION

**A.  Rednap's criticisms of plaintiff's complaint and history of serial ADA litigation would appear less frivolous if the Ninth Circuit had not rejected its arguments in no fewer than <u>seven</u> published opinions.**

The defense begins its motion with the "usual" indignant screed against ADA litigation, both in general and particularly focusing on litigation brought by Kohler and his counsel.[1]  *Docket No. 11, p. 6.*[2]  First, the defense cites to the large number of cases that they (*viz.*, Kohler and his counsel) have filed, using that figure to attack the scruples and ethics of their opponents.  *Ibid.*  The defense follows-up with two pages of unsupported accusations – *e.g.*, Kohler and his counsel use the ADA as a "cynical money making machine ... against small business owners who lack the resources to defend themselves" – and concludes by calling their opponents extortionists who engage in "suspect conduct."  *Docket No. 11, pp. 6-7.*  After its onslaught of disparaging remarks, the defense shifts gears by criticizing the form and substance of plaintiff's complaint, claiming that it is legally deficient because it (*i.e.*, the complaint) includes neither a date of incident nor allegations that Kohler personally encountered each barrier.  *Docket No. 11, pp. 7-8.*  (A curious tactic to say the least, since insufficient allegations *is not* one of the grounds supporting defendant's motion.)  The problem with these arguments is that none of them are supported by, and some are in direct conflict with, published Ninth Circuit authority.

---

[1]  We use the term, *usual*, because these attacks are so common that the Honorable Stephen G. Larson took time to acknowledge them in his opinion on the same.  *Leslie's Poolmart*, 687 F.Supp.2d at 959.

[2]  To avoid confusion, all citations will be based on the page number in the court's header, and not the page number identified in the defendant's footer.

To begin with, the Ninth Circuit has acknowledged, on multiple occasions, the importance of serial litigation in ADA enforcement. *See, e.g., Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 980 (9th Cir. 2010), quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."); *see also D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (quoting same) ("The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny."). Accord, Samuel R. Bagnestos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 5 (2006). The United States Department of Justice <u>shares</u> this view, and has even gone so far as to express support for serial ADA litigants, our firm in particular: "The United States could not investigate every place of public accommodation in the country to determine if it is in compliance with the ADA. Effective enforcement of Title III, therefore, depends upon a combination of suits by the United States and litigation by individuals with disabilities who are aware of and encounter violations in their local communities." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 2010 WL 767027 (9th Cir. March 5, 2010) (Brief for the United States as Amicus Curiae on Rehearing *En Banc* in support of attorney Lynn Hubbard). Rednap ignores this authority, for no other reason than it is inconvenient to their argument.

The Ninth Circuit has also rejected the notion that disabled plaintiffs and their counsel behave inappropriately by coupling ADA claims with a request for monetary damages.  *See Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 845, n. 13 (9th Cir. 2007), criticizing, *Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1033 (C.D. Cal.2005), vacated and remanded, 237 Fed.Appx. 148 (9th Cir.2007) ("if damage allegations are founded on true facts, then a party should not be faulted for seeking damages and the attorneys' fees the ADA expressly permits the party to pursue").  Written by the same panel that vacated the lower court opinion in *Del Taco, Skaff* offers a compelling rebuttal to Rednap's unfounded accusations.  *Ibid.*  Nor does *Molski v. Mandarin Touch* offer support for the defense's representation that ADA cases extort money from small business owners.  Openly questioned in two published dissents by nine circuit judges, Chief Judge Kozinski's succinctly summarized the weakness of the *Mandarin Touch* analysis with a single sentence: "The district court made, and the panel affirms, a finding that Molski is a liar and a bit of a thief, without any evidence at all."  *Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1221 (9th Cir. 2008).  No witnesses testified; no evidence was presented; there was no cross-examination; there were no evidentiary rulings; and Molski, whose veracity the district court impugned, was not even present.  *Ibid.*  In short, the *Mandarin Touch* made factual findings without any actual facts.  *Ibid.*

Other judges were equally critical of the *Mandarin Touch* holding that a physically disabled individual, who relies on a wheelchair for ambulation, could be accused of "systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements" by simply seeking monetary damages in conjunction with an ADA claim.  *See, e.g., Wilson,* 411 F.Supp.2d at 1198, citing 28 U.S.C. § 1367 and *Molski v. Mandarin Touch Restaurant*, 347

F.Supp.2d 860, 864 (C.D. Cal. 2004) ("Judge Rafeedie [] is troubled by the fact that Molski, in conjunction with the ADA claim, sought monetary damages under state law. He wrote that 'Molski's ADA claims are a sham, used as a pretext to gain access to the federal courts, while he pursues remedies that are available – sometimes exclusively – under California law. … I am perplexed that a vexatious litigation finding is thought to be supported by the fact that a plaintiff asserts supplemental jurisdiction, which is, after all, specifically provided for in federal law."). Even the State Bar Court of California <u>agreed</u> that the *Mandarin Touch* findings were based on assumption and innuendo; and concluded that the ADA lawyer involved, Tom Frankovich, had done nothing wrong. *In the Matter of Thomas Edward Frankovich*, Case No. 04-O-15890, at pp. 3-11 (State Bar Court 2009).[3] These opinions were published years ago; they are not "new" to anyone. Yet, Rednap ignored them for the ostensive reason that it was inconvenient for their argument.

Finally, Rednap's criticism that plaintiff's complaint is improper because it does not (1) allege the date that Kohler visited the restaurant, and (2) that he personally encountered all eighteen barriers identified in that complaint, (*Docket No. 11, pp. 7-8*), also runs afoul of published Ninth Circuit authority. Specifically, the Ninth Circuit does not require plaintiffs to plead dates of incident in their complaint, as it would be tantamount to pleading around an anticipated affirmative defense (*i.e.*, statute of limitations). *See U.S. v. McGee*, 993 F.2d 184, 187 (9th Cir.1993). Accord, *Kohler v. Flava Enterprises*, 2010 WL 3238946, *3 (S.D. Cal. Aug. 13, 2010) (citing same) ("Plaintiff is correct that he is not required to plead around anticipated affirmative defenses, including the statute of limitations."). The Ninth Circuit also does not require

---

[3] A copy of the State Bar's opinion is available at http://members.calbar.ca.gov/courtDocs/04-f-15890-2.pdf

disabled plaintiffs to personally encounter an architectural barrier – much less allege that fact in a complaint – to bring an ADA lawsuit, as *actual knowledge* is sufficient to confer standing.  See *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041-1042 (9th Cir. 2008); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 947 (9th Cir. 2011) (same).  Instead, disabled plaintiffs need only identify the barrier and briefly explain how it relates to their disability.  *Cf., Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 954-955 (9th Cir. 2011) (complaint improperly listed barriers known to disabled plaintiff *without* explaining how the barrier related to his disability); *Skaff,* 506 F.3d at 841-842 ("the purpose of a complaint [is to] give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction … concerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant.").  As illustrated by defendant's motion, this is *precisely* what Kohler did here.  *Docket No. 11, p. 8* ("When describing the first alleged barrier, for example, Plaintiff states '[t]he slopes and cross slopes of the disabled parking space exceed 2.0% due [] to the encroaching built-up curb ramp. Kohler has a difficult time transferring/unloading from his vehicle due to his wheelchair rolling.'").  The form and substance of Kohler's complaint is, thus, consistent with established Ninth Circuit case law, and Rednap's suggestion otherwise is completely unfounded.

      Boiled to its essence, the defense ignored a legion of published Ninth Circuit opinions in order to disparage Kohler and his counsel.  Such a tactic is not only improper, it gives short-shrift to the legitimate concerns about what role federal courts should play over state law claims based on the ADA.  As such, we would ask the court to disregard their inflammatory statements on the grounds that they are factually unsupported and contradict established Ninth Circuit authority.

*Kohler v. Rednap, Inc.,* Case No. 2:11-cv-2752 GAF-SS
Opposition to defendant's motion to dismiss state law claims

### B. Defendant's interpretation of 28 U.S.C. § 1367(c) creates an exception that swallows the rule – *viz.,* supplemental jurisdiction is *automatically* declined over any state law claim seeking damages for ADA violations – and is contrary to the Supreme Court's holding in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir.2004), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The exercise of supplemental jurisdiction is usually mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c). *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994) ("[U]nless a court properly invokes a section 1367(c) category exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted."), overruled on other grounds, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1093 (9th Cir. 2008). Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Ibid.*, citing 28 U.S.C. § 1367(c).

### B. Defendant's interpretation of 28 U.S.C. § 1367(c) creates an exception that swallows the rule – *viz.,* supplemental jurisdiction is *automatically* declined over any state law claim seeking damages for ADA violations – and is contrary to the Supreme Court's holding in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir.2004), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The exercise of supplemental jurisdiction is usually mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c). *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994) ("[U]nless a court properly invokes a section 1367(c) category exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted."), overruled on other grounds, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1093 (9th Cir. 2008). Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Ibid.*, citing 28 U.S.C. § 1367(c).

*Kohler v. Rednap, Inc.,* Case No. 2:11-cv-2752 GAF-SS
Opposition to defendant's motion to dismiss state law claims

-8-

With respect to the ADA, district courts in this circuit have declined to exercise supplemental jurisdiction over state law claims that predominate over federal claims in instances when: (1) a plaintiff abandons his federal ADA claims; (2) a plaintiff's request for injunctive relief subsequently becomes moot; (3) a plaintiff's numerous state law claims outnumber a solitary federal claim under the ADA; or (4) when plaintiff's federal claims are dismissed before trial. *See, e.g., Johnson v. Makinen*, 2009 WL 2137130 (E.D. Cal. July 15, 2009), citing *Johnson v. Barlow*, 2007 WL 1723617 (E.D. Cal. June 9, 2007) (string cite omitted). None of those concerns, however, are implicated in a case where plaintiff has overlapping (and viable) state and federal claims. *Ibid.* By way of its instant motion, Rednap asks the court to disregard this well established history and dismiss Kohler's state law claims because: (1) the remedies provided under the Unruh Act and CDPA are ambiguous; (2) the Unruh Act and CDPA allow for damages, while the ADA is limited to injunctive relief; and (3) Kohler is "forum shopping" by filing this matter in federal court. With all due respect to opposing counsel, these arguments are not well founded.

1. *The California Legislature resolved the "novel and complex" issues of state law, identified by the defense, in 2008 with the passage of Senate Bill 1608.*

Contrary to Rednap's representation otherwise, the state law issues advanced in this case are not novel and complex; nor is there a dispute among district courts about whether "daily damages" are permitted under either the CDPA or Unruh Act (not anymore). *Docket No. 11, p. 10.* In 2008, the California Legislature passed Senate Bill 1608, (Stat. 2008, Chap. 549), which restricted the availability of statutory damages under the Unruh Act or CDPA to instances where "the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." *See Munson v. Del Taco, Inc.*,

46 Cal. 4th 661, 678-679 (2009) citing Calif. Civil Code § 55.56(b).  This is why the defense failed to cite any case published after 2005 to support, much less justify, its position.  Statutory damage awards under California law ceased being novel and complex after the California Legislature and Supreme Court eliminated this purported ambiguity in 2008.  *Ibid.*  Rednap's claim otherwise is, thus, unfounded and should be rejected.

2.   *Rednap twists the definition of "substantially predominates" beyond the original meaning intended by the Supreme Court, and codified by Congress, to include state laws with identical burdens of proof and standards of liability as federal law.*

The question of whether state law claims for damages based on federal law violations "substantially predominate" over federal law claims for injunctive relief based on *identical* federal law violations under section 1367(c)(2) is somewhat thornier.  Both the Unruh Act and the CDPA provide for damages based on ADA violations, whereas the ADA provides only for injunctive relief.  *Compare,* Calif. Civil Code §§ 51(f), 52(a) (Unruh Act), 54.1(d), 54.3(a) (CDPA), *with* 42 U.S.C. § 12188(a) (ADA).  Disabled plaintiffs frequently join these state and federal claims together in one lawsuit because the burden of proof is identical.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730-31 (9th Cir. 2008).  California district courts, however, are split on whether such a joining is proper, and whether these state law claims substantially predominate over their federal counter-part.[4]  We would respectfully suggest

---

[4]  **Unruh and CDPA claims do not substantially predominate over the ADA:** *Johnson v. Makinen*, 2009 WL 2137130 (E.D. Cal. July 15, 2009); *Johnson v. Barlow*, 2007 WL 1723617 (E.D. Cal. June 9, 2007); *Chavez v. Suzuki*, 2005 WL 3477848 (S.D. Cal. Nov. 30, 2005); *Wilson v. PFS LLC*, 2006 WL 3841517 (S.D. Cal. Nov. 2, 2006).

**Unruh and CDPA claims substantially predominates over the ADA**: *Feezor v. Tesstab Operations Group, Inc.*, 524 F.Supp.2d 1222, 1224 (S.D.

that district courts who decline supplemental jurisdiction over state law claims under such circumstances are in error.

Congress intended to codify the Supreme Court's holding in *United Mine Workers of America v. Gibbs,* when determining whether a state law claim substantially predominates over its federal counter-part under section 1367(c)(2). *See Executive Software*, 24 F.3d at 1556-57, *comparing Gibbs,* 383 U.S. at 726-27, *with* 28 U.S.C. § 1367(c)(2); *see also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3rd Cir.1995) ("Given the origin of the 'substantially predominate' standard, a district court's analysis under § 1367(c)(2) should track the Supreme Court's explication of that standard in *Gibbs*."). *Gibbs* cautioned lower courts that – in situations where a state law claim is closely tied to questions of federal policy (*e.g.*, federal pre-emption) – the argument for exercising supplemental jurisdiction is particularly strong:

> [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.* In the present case, for example, the allowable scope of the state claim implicates *the federal doctrine of pre-emption*; while this interrelationship does not create statutory federal question jurisdiction, [], its existence is relevant to the exercise of discretion.

*Gibbs,* 383 U.S. at 726-27 (citation omitted).

---

Cal. 2007); *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F.Supp.2d 1120 (S.D. Cal. 2005); *Pinnock v. Safino Designs, Inc.*, 2007 WL 2462107 (S.D. Cal. Aug. 28, 2007).

Under the *Gibbs* standard, simply because the state law claim contains a remedy not otherwise provided under federal law is not, in and of itself, sufficient grounds to decline supplemental jurisdiction. *Cf. Gibbs,* 383 U.S. at 728 (citation omitted) ("We are not prepared to say that in the present case the District Court exceeded its discretion in proceeding to judgment on the state claim. … Although [the federal law claim] limited recovery to compensatory damages based on secondary pressures, [] and state law allowed both compensatory and punitive damages, and allowed such damages as to both secondary and primary activity, the state and federal claims arose from the same nucleus of operative fact and reflected alternative remedies."). In light of the *Gibbs* standard, the pressure to maintain supplemental jurisdiction over state law claims based on the ADA is formidable.

The ADA not only preempts all lesser state laws and remedies, 42 U.S.C. § 12201(b) (the example in the *Gibbs* analysis for *maintaining* supplemental jurisdiction), but – in enacting the ADA – Congress sought "to ensure that the Federal Government play[ed] a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities[.]" 42 U.S.C. § 12101(b)(3). The rule proposed by the defense – *i.e.,* supplemental jurisdiction is *automatically* declined over state law claims seeking damages for ADA violation – would effectively preclude federal courts from ever asserting supplemental jurisdiction over a state law claim based on either act, even in instances such as this where the state and federal claims are so intertwined that it makes little sense to decline supplemental jurisdiction. Phrased somewhat differently, Rednap twists the definition of "substantially predominates" beyond the original meaning intended by the Supreme Court, and codified by Congress, to include state laws (*e.g.*, Unruh Act and CDPA) with identical burdens of proof and standards of liability as the federal law (*e.g.*, ADA) upon which

original federal question jurisdiction is predicated. This is particularly true where, as here, the disabled plaintiff has limited the monetary damages sought to the statutory minimum and no personal injuries are alleged. *Cf., Molski v. Mandarin Touch Restaurant,* 359 F.Supp.2d 924, (C.D. Cal. 2005), *affirmed sub nom, Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) (District court finds plaintiff's state law damages claims substantially predominate over federal claim based on exaggerated personal injury allegations and million dollar settlement demands.).

Boiled to its essence, the defense's interpretation of section 1367 creates an exception that swallows the rule. Kohler is pursuing state claims under the Unruh Act and CDPA, and a federal claim under the ADA. He has not abandoned any claims, his request for injunctive relief has not become moot, and his federal claim has not been dismissed. In fact, except for a few uniquely state law architectural barriers, (*i.e.*, Part 5.5 of California's Health and Safety Code), his state law claims are entirely dependent upon the ADA and a violation of its provisions. Because these state law claims easily flow from the same nucleus of operative facts, they do not predominate over the federal ADA claim, as established by *Gibbs* and codified in section 1367(c)(2), and this court is required to maintain supplemental jurisdiction under 1367(a). Kohler would therefore ask the court to maintain supplemental jurisdiction over these ADA based state law claims.

### 3. The defense's forum shopping argument would appear less frivolous if plaintiff's counsel did not have a proven track record of obtaining injunctive relief under, and fulfilling the spirit of, the ADA.

The defense's final argument is that this court should decline supplement jurisdiction based on "fairness and comity" because (1) Kohler only filed this lawsuit to get access to the federal courts; (2) Kohler's remaining claims are all based on California law; (3) Kohler has a habit of filing cases in federal courts; (4) Kohler's true intention was not to prosecute his ADA claim but pursue damages in a more favorable forum; (5) comity obligates this court to allow California courts to interpret California law; and (6) other district courts have declined supplemental jurisdiction. *Docket No. 11, p. 7.* With all due respect to opposing counsel, these arguments are also without merit. As a preliminary matter, Rednap not only fails to offer a scrap of evidence to even suggest that Kohler filed this lawsuit to pursue damages, it disregards his counsel's <u>proven</u> track record of demanding ADA compliance in every ADA lawsuit. *See, e.g., Vicorp,* 407 F.Supp.2d at 1118-1120 (one hundred percent of the 140 ADA lawsuits filed by plaintiff's counsel conformed to the ADA within two years). And while Kohler does have a history of filing in federal court, that is only because Congress gave him the right to do so. *See Skaff,* 506 F.3d at 845, n. 13, citing 28 U.S.C. § 1367(a) ("Congress has provided us with supplemental jurisdiction over state law claims that are part of the same case as ADA claims. [] If Congress concludes that the damages available under state law are creating abuse in the federal courts, it can limit the remedies available."). Nor has Rednap offered evidence suggesting that federal courts are a "more favorable forum" for disabled plaintiffs. Quite the opposite, in fact; defendant's motion quotes a number of district court opinions (*e.g.*, *Mandarin Touch, Del Taco, Hitching Post, Brick Oven*) that have openly questioned the motives and

scruples of disabled plaintiffs and their lawyers. To suggest that federal court is a more favorable forum under these circumstances is nonsense.

Finally, with respect to the argument that state courts should determine and interpret state law, Rednap fails to cite a single issue – other than the defunct issue of daily damages – that needs interpreting. Instead, they cite to *Hitching Post* and make the conclusory statement that "[a]s this case deals with the same issues of law, this court should decline supplemental jurisdiction out of respect for the principle of comity." *Docket No. 11, p. 12.* What Rednap fails to realize, however, is that a lot has changed in six years, and what was a disputed issue of law in 2005 is no longer disputed in 2011. In 2005, there was a question about whether the passage of time could support a statutory damages award; in 2011, that dispute is resolved by the California Legislature. *Compare, e.g., Molski v. Hitching Post I Rest., Inc.,* 2005 U.S. Dist. LEXIS 39959, **21, 27 (C.D. Cal. May 25, 2005) (court finds that the damages provisions of the Unruh Act and DPA raise issues of unsettled state law which are better left to the California courts to resolve), *with* Calif. Civil Code § 55.56(b) (legislature statutorily settle unresolved issue of statutory damages). Because the defense cannot point to a single dispute of federal law in this case, their motion to dismiss based on forum shopping and comity must be rejected.

## CONCLUSION

For the reasons stated above, Kohler asks the court to deny Rednap's motion to dismiss as both legally and factually unsupported.

Dated: June 19, 2011              DISABLED ADVOCACY GROUP, APLC


                                                /s/ Scottlynn J Hubbard IV        /
                                                Scottlynn J Hubbard IV, esq.
                                                Attorney for Plaintiff